IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil No. 17-00599 (APM) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## INTRODUCTION

In an administration marked by scandal and escalating controversy Attorney General Jeff Sessions stands out. Although he is the nation's top law enforcer, Attorney General Sessions already has had to recuse himself from the FBI's investigation of possible collusion between individuals associated with the Trump campaign and Russia because of his own conflicts of interest. The attorney general made his recusal decision just hours after the news broke that he had had two previously undisclosed meetings with Russian officials during the presidential campaign. Following his recusal, it was revealed that Attorney General Sessions failed to account for his Russian contacts on his SF-86 security application form. And just last night, CNN reported on yet another previously undisclosed private meeting the attorney general had with the Russian ambassador during the presidential campaign.[1] On top of all this, the attorney

---

[1] Jim Sciutto, Jamie Gangel, Shimon Prokupecz, and Marshall Cohen, First on CNN: Sources: Congress Investigating Another Possible Sessions-Kislyak Meeting, CNN, June 1, 2017, available at http://www.cnn.com/2017/05/31/politics/congress-investigating-jeff-sessions-russian-ambassador-meeting/index.html?sr=twCNN060117congress-investigating-jeff-sessions-russian-ambassador-meeting1203AMVODtopPhoto&linkId=38226884.

general's participation in the firing of former FBI Director James Comey has raised serious questions about his compliance with the recusal.

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the expedited processing and release of records held by defendant Department of Justice ("DOJ") concerning the attorney general's recusal decision. Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") seeks three narrow and discrete categories of records: (1) calendars of the attorney general for the five days surrounding his recusal decision; (2) records reflecting the advice and recommendations regarding his recusal, which Attorney General Sessions referenced explicitly during a press conference; and (3) documents effectuating his recusal within DOJ.

Although DOJ has agreed that the requested information qualifies for expedited processing and purports to be expediting the request, nearly three months have passed with no discernable action on DOJ's part beyond identifying internally the requested calendar pages. Not only has DOJ failed to accord CREW's request the expedition it warrants, but DOJ has failed to process the request within the statutory time frame (20 business days) for standard, non-expedited requests. Filing this lawsuit also has failed to advance this matter; DOJ's attorney has been unable to even identify the scope of the responsive documents, and has provided a timeframe for producing them to CREW that pushes this matter months into the future.

An order compelling the immediate processing and production of these documents is critical because, as DOJ concedes, the request "involves a matter of widespread and exceptional media interest and the subject matter raises possible questions about the government's integrity affecting public confidence." Indeed, those questions are growing with the latest revelations about Attorney General Sessions' failure to account for his Russian contacts. Plaintiff's

uncontested right to expedition will be irretrievably lost absent the requested relief. Because plaintiff's rights and defendant's obligations are highly time-sensitive, plaintiff respectfully requests entry of an order compelling DOJ to process and disclose the requested records immediately.

## STATEMENT OF FACTS

On March 1, 2017, the *Washington Post* reported that during the 2016 presidential campaign, while playing a prominent role supporting then-candidate Donald Trump, Attorney General Jeff Sessions met twice with Russia's ambassador to the United States, Sergey Kislyak. One of these meetings took place at then-Senator Sessions' congressional office, and the other took place at the Republican National Convention. The existence of both meetings had not previously been disclosed.[2]

During his January 10, 2017 confirmation hearing before the Senate Judiciary Committee, Mr. Sessions was asked by Sen. Al Franken (D-MN) what he would do if he learned of any evidence that anyone affiliated with the Trump campaign had communicated with the Russian government during the campaign. Mr. Sessions responded that he was "not aware of any of those activities," and went on to volunteer: "I have been called a surrogate at a time or two in that campaign and I did not have communications with the Russians."[3]

---

[2] Karoun Demirjian, Ed O'Keefe, Sari Horwitz and Matt Zapotosky, Attorney General Jeff Sessions Will Recuse Himself from Any Probe Related to 2016 Presidential Campaign, *Washington Post*, Mar. 2, 2017, *available at* https://www.washingtonpost.com/powerpost/top-gop-lawmaker-calls-on-sessions-to-recuse-himself-from-russiainvestigation/2017/03/02/148c07ac-ff46-11e6-8ebe-6e0dbe4f2bca_story.html?utm_term=.40f54941e776.

[3] *See, e.g.*, Fairh Karimi, What Jeff Sessions Said About Russia Ties During Confirmation Hearings, *CNN*, Mar. 3, 2017, *available at* http://www.cnn.com/2017/03/02/politics/russia-jeff-sessions-confirmation-hearing/.

3

Subsequently, Sen. Patrick Leahy (D-VT) requested that Mr. Sessions provide answers to follow-up written questions. Among the questions Sen. Leahy posed was the following: "Several of the President-elect's nominees or senior advisors have Russian ties. Have you been in contact with anyone connected to any part of the Russian government about the 2016 election, either before or after election day?"[4] Mr. Sessions responded with one word, "No."[5]

Less than 24 hours after the *Washington Post* broke the story about Attorney General Sessions' failure to disclose his two meetings with the Russian ambassador, the attorney general held a press conference at which he announced he was recusing himself from any existing or future investigations of any matter relating in any way to the presidential campaigns. Attorney General Sessions explained his staff had recommended recusal. Specifically, "[t]hey said that since I had involvement with the campaign, I should not be involved in any campaign investigation. I have studied the rules and considered their comments and evaluation. I believe those recommendations are right and just."[6]

At the press conference the attorney general also suggested there was no direct link between the *Washington Post*'s revelations and his recusal decision. According to the attorney general, on the preceding Monday – three days earlier – he and his staff had "set a meeting with an eye on a final decision" on the recusal question for Thursday, March 2, 2017, the day of his press conference.[7]

---

[4] Karimi, *CNN*, Mar. 3, 2017.
[5] *Id.*
[6] Aaron Blake, Transcript of Jeff Sessions's Recusal News Conference, Annotated, *Washington Post*, Mar. 2, 2017, quoting Attorney General Jeff Sessions, *available at* https://www.washingtonpost.com/news/the-fix/wp/2017/03/02/transcript-of-jeff-sessionss-recusal-press-conference-annotated/?utm_term=.12c1b91c07a4.
[7] *Id.*

4

On March 6, 2017, CREW sent a FOIA request by facsimile to DOJ's Office of Information Policy requesting three categories of records: (1) all records containing or reflecting advice and/or recommendations regarding whether Attorney General Sessions should recuse himself from any matters involving the 2016 presidential campaign; (2) all calendars for the attorney general for the period February 27, 2017 through March 3, 2017; and (3) all documents effectuating the attorney general's recusal within DOJ. Complaint ("Compl."), ¶ 13.[8] CREW sought a waiver of fee associated with processing its request. CREW explained the requested records likely will contribute to public understanding of the motivation behind the attorney general's recusal decision, the extent to which it was guided by advice from his staff, and the extent to which it was influenced by the public revelation he had not testified fully and truthfully before Congress during his confirmation hearing. *Id.*, ¶ 14. Given his status as the nation's top law enforcement official, the public interest in his integrity and honesty could not be greater. *Id.*

CREW also sought expedition of its request because the subject matter is of widespread and exceptional media interest and the requested information involves possible questions of the government's integrity that affect public confidence. *Id.*, ¶ 15. Pursuant to DOJ regulations, CREW submitted its request for expedition to the Director of Public Affairs on March 6, 2017. Compl., ¶ 15.

By letter dated March 15, 2017, DOJ advised CREW that DOJ's Director of Public Affairs had determined CREW's request for expedited processing should be granted. *Id.*, ¶ 16.[9] DOJ further advised it had not yet made a decision on CREW's request for a fee waiver. *Id.*

---

[8] For the Court's convenience, a copy of the request is enclosed as Exhibit A.
[9] For the Court's convenience, a copy of this letter is enclosed as Exhibit B.

DOJ did not provide CREW with a date by which the agency would make a determination under the FOIA on CREW's request.

Before CREW filed this lawsuit on April 4, 2017, DOJ orally advised CREW it had located documents responsive to CREW's request for the attorney general's calendars for the designated five-day period. *Id.*, ¶ 17; Defendant's Answer to Plaintiff's Complaint (Dkt. 8), ¶ 17. Nevertheless, despite DOJ's claim to be processing CREW's request on an expedited basis, to date DOJ has not made a determination on this or any other aspect of CREW's request, as the FOIA requires. Most recently, DOJ's counsel suggested a final response is not anticipated until July 31, nearly five months after CREW filed its expedited FOIA request, with an expected date of June 30, 2017, for an interim response for some unidentified portion of the request.[10]

Since the filing of CREW's expedited FOIA request and this lawsuit, there have been new revelations about the attorney general. For example, Attorney General Sessions also failed to disclose meetings with Russian officials in his application for a security clearance, Form SF-86,[11] and omitted altogether any mention of a meeting with Russian Ambassador Kislyak on April 27, 2016.[12] In addition, the attorney general's role in the firing of FBI Director Comey has prompted concerns he violated the terms of his recusal.[13] The ongoing nature of these improprieties underscores the urgency behind public disclosure of the records CREW has requested.

---

[10] *See* Email from Kathryn C. Davis, DOJ to Anne L. Weismann, May 26, 2017 (attached as Exhibit C).
[11] Manu Raju and Evan Perez, AG Sessions Did Not Disclose Russia Meetings in Security Clearance Form, DOJ Says, *CNN*, May 24, 2017, *available at* http://www.cnn.com/2017/05/24/politics/jeff-sessions-russian-officials-meetings/.
[12] Sciutto, Gangel, Prokupecz, and Cohen, *CNN*, June 1, 2017.
[13] Ari Melber, Meredith Mandell, and Diana Marinaccio, Did AG Sessions Violate His Recusal by Advising on Comey Firing?, *NBC News*, May 10, 2017, *available at* http://www.nbcnews.com/news/us-news/did-ag-sessions-violate-his-recusal-advising-comey-firing-n757576.

## ARGUMENT

For a presidency that promised to "drain the swamp," the first five months of the Trump administration have been marked by extensive evidence of ethical shortcomings, if not outright failings, and misconduct so serious as to warrant an FBI investigation, a special counsel, and two congressional investigations. The American public needs to have confidence in our government, its leaders, and the processes we have for holding those officials accountable. CREW's FOIA request seeks information that would inform the public about the actions and words of the nation's top law enforcement officer, thereby serving a fundamental goal of the FOIA.

The context and subject of CREW's FOIA request demonstrate the critical need for preliminary injunctive relief. DOJ has violated its clear obligations under the FOIA and the resulting harm to CREW and the public outweigh any legitimate interest of the government. Anything less than immediate injunctive relief will impede the ability of CREW and the public to examine the attorney general's role in the growing Russia scandal, including his participation in the firing of Director Comey notwithstanding his promised recusal. DOJ has violated a clear statutory command and must be enjoined.

### I. THE COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF.

The FOIA confers on this Court jurisdiction to consider this matter and grant appropriate relief. The statute provides, in pertinent part:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of of business . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B). The Court's jurisdiction under this provision includes review of "[a]gency action to deny or affirm denial of a request for expedited processing . . . based on the

record before the agency at the time of the determination." *Id.*, at § 552(a)(6)(E)(iii). *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001).

Here, notwithstanding DOJ's purported decision to "expedite" CREW's request, the agency has failed to respond even within the generally applicable 20-working-day time limit established by 5 U.S.C. § 552(a)(6)(A) for non-expedited requests. Under these circumstances, CREW's claim is ripe for adjudication because CREW has constructively exhausted all applicable administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C):

> [a]ny person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions[.]

*See also Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) (requester may bring suit when agency fails to comply with applicable time limits). Further, as the FOIA provides, in reviewing DOJ's actions, "the court shall determine the matter de novo." 5 U.S.C. § 552(a)(4)(B).

## II.   CREW IS ENTITLED TO A PRELIMINARY INJUNCTION.

In considering CREW's request for the entry of a preliminary injunction compelling defendant DOJ to process CREW's FOIA request and disclose responsive records immediately, the Court must assess four factors: (1) likelihood of success on the merits; (2) irreparable injury to the plaintiff; (3) burden on others' interests; and (4) the public interest. *Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)). Specifically, in FOIA cases, courts in this district have recognized preliminary injunctions may be appropriate. *See, e.g., Elec. Privacy Info. Ctr. v. Dep't of Justice* ("*EPIC I*"),

8

416 F. Supp. 2d 30, 35 (D.D.C. 2006) (citations omitted). Consideration of these four factors here firmly establishes CREW's entitlement to injunctive relief.

### A.  CREW is Likely to Prevail on the Merits of Its Claim.

Given CREW's uncontested entitlement to the expedited processing of its request under the explicit terms of the FOIA and defendant DOJ's regulations, CREW's likelihood of prevailing on the merits could not be stronger.

For non-expedited requests, the FOIA requires the agency to "determine within 20 [business] days . . . after the receipt of . . . [a] request whether to comply with such request and shall immediately notify the person making such request of such determination[.]" 5 U.S.C. § 552(a)(6)(A)(i). Under the FOIA and DOJ regulations, if the agency grants expedited treatment, DOJ is obligated to process the request as "soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii); 28 C.F.R. § 16.5(d)(4). Here, DOJ determined CREW's request is entitled to expedited processing based on the conclusion of the Director of Public Affairs that the subject matter of the request involves "'[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.'"[14] There is, however, no indication in the record that DOJ has done anything more than pay lip service to CREW's statutory and regulatory entitlement to expedition.

Because DOJ already has determined that CREW's FOIA request is entitled to expedited processing, the only merits question before the Court is whether the agency is, in fact, processing the request "as soon as practicable." The answer clearly is no, where the agency has failed to satisfy the processing time for even a standard, non-expedited request. In those circumstances,

---

[14] *See* Letter from Vanessa R. Brinkmann, Senior Counsel, DOJ Office of Information Policy to Anne L. Weismann, March 15, 2017 (quoting 28 C.F.R. § 16.5(e)(1)(iv)) (Exhibit B).

9

the agency "presumptively also fails to process an expedited request 'as soon as possible.'" *EPIC I*, 416 F. Supp.2d 30, 39 (D.D.C. 2006). Moreover, while the agency may rebut the presumption by demonstrating that the time period is "truly not practicable," courts are not required simply to "take at face value an agency's determination that more time is necessary." *Id.* at 37, 39.

When considering what is "practicable" with respect to the processing of CREW's request, it is important to note that the responsive documents at issue are limited in number and well defined. CREW seeks five days from the calendar of Attorney General Sessions.[15] Prior to filing suit, DOJ advised CREW's counsel that the agency had located records responsive to this part of the request. Yet inexplicably, DOJ's counsel recently advised CREW these records "are still in processing."[16] Even given the attorney general's likely busy schedule, the idea that DOJ needs nearly five months to process this part of CREW's request is patently absurd.

Similarly, CREW's request for the advice and recommendations the attorney general received regarding recusal should, by his own description, involve a limited number of people and a limited number of documents. During his press conference, Attorney General Sessions identified two meetings he had concerning his recusal: one "with senior officials shortly after arriving" at DOJ and one on March 2, where he asked his staff "for their candid and honest opinion[.]"[17] Based on this description, DOJ's claim to need up to five months to process responsive documents lacks any credibility.

The third category of documents CREW seeks is equally circumscribed: documents effectuating the attorney general's recusal within DOJ. Again, there likely are only a limited

---

[15] CREW has now excluded personal appointments during these five days from its request.
[16] *See* Exhibit C.
[17] Blake, *Washington Post*, Mar. 2, 2017.

10

number of individuals who would have generated or received any such document. Further, given that the attorney general made his recusal decision on March 2 and CREW's request was submitted on March 6, the time period in question is very short. All of this adds up to a presumably small number of responsive documents, yet DOJ has produced none and apparently has not even completed its searches.

DOJ has not, and cannot, offer any adequate justification for the three-month delay, nor has it justified its claim to need an additional two months. For all these reasons, CREW is entitled to the immediate processing and release of the requested records.

### B. CREW Will Suffer Irreparable Injury Absent the Requested Injunctive Relief.

Unless DOJ's unlawful failure to comply with its statutory obligation to expedite the processing of CREW's FOIA request is immediately enjoined, CREW will suffer irreparable injury. The very nature of the right CREW seeks to vindicate in this action – expedited processing – depends upon timeliness, because "stale information is of little value." *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988); *EPIC I*, 416 F. Supp. 2d at 40-41; *see also August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) ("[T]he statutory goals [of the FOIA] – efficient, *prompt*, and full disclosure of information – can be frustrated by agency actions that operate to delay the ultimate resolution of the disclosure request." (emphasis in original) (internal quotation marks and citations omitted). Quite simply, "failure to process FOIA requests in a timely fashion is 'tantamount to denial.'" *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006) (quoting H.R. Rep. No. 93-876, at 6 (1974)). *See also Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 44 (D.D.C. 2014) ("*EPIC II*").

This district has recognized explicitly that the requisite injury is present, and preliminary injunctive relief is appropriate, in cases like this one where expedited FOIA processing is at issue and time therefore is of the essence:

> As the Supreme Court has made clear, public awareness of the government's actions is 'a structural necessity in a real democracy.' Not only is public awareness a necessity, but so too is *timely* public awareness. For this reason, Congress recognized that delay in complying with FOIA requests is 'tantamount to denial.' The D.C. Circuit likewise acknowledged that 'stale information is of little value.' The 1966 amendments to FOIA creating the statutory right to expedition in certain cases 'underlined Congress' recognition of the value in hastening release of certain information.' As [plaintiff] correctly notes, 'the loss of that 'value' constitutes a cognizable harm.' As time is necessarily of the essence in cases like this, such harm will likely be irreparable.

*EPIC I*, 116 F. Supp. 2d at 40-41 (emphasis in original; citations omitted). Under the statutory scheme Congress established in the FOIA, timing clearly is a critical component of expedited processing, and unless DOJ is ordered to process CREW's request immediately and release all responsive documents, CREW's right to expedition under the FOIA will be irretrievably lost.

In addition to the loss of its clearly established statutory right to expedition, the further delay in processing CREW's request under the timetable DOJ proposes will irreparably harm CREW's ability, and that of the public, to obtain in a timely fashion information bearing directly on the actions of the attorney general. The Supreme Court has long recognized our democracy's interest in "the uninhibited, robust, and wide-open debate about matters of public importance that secures an informed citizenry." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 815 (1985) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (internal quotation marks omitted)); *see also Bd. of Educ. v. Pico*, 457 U.S. 853, 876 (1982) ("[T]he Constitution presupposes the existence of an informed citizenry prepared to participate in governmental affairs.").

If there is to be meaningful public discussion about the ties between the Trump administration and Russia, including those of the attorney general and whether he has complied with the terms of his recusal, such examination "cannot be based solely upon information that the Administration voluntarily chooses to disseminate." *EPIC I*, 416 F. Supp. 2d at 41 n.9. Indeed, the public oversight mechanism the FOIA affords plays a central part in open and democratic debate on critical policy issues. As the Supreme Court has observed, the FOIA is "a means for citizens to know what the Government is up to. The phrase should not be dismissed as a convenient formalism. *It defines a structural necessity in a real democracy.*" *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004) (emphasis added; citation and internal quotation marks omitted). *See also NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Housing & Urban Dev.*, 2007 U.S. Dist. LEXIS 88027, at *19 (S.D.N.Y. Nov. 30, 2007) (FOIA's expedited processing procedures "are statutorily imposed and . . . are important to insuring that the public receive time-sensitive information without delay") (citation omitted).

Delay in processing FOIA requests "may well result in disclosing the relevant documents after the need for them in the formulation of national . . . policy has been overtaken by events." *Natural Resources Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002). Where, as here, time is of the essence, CREW and the public will suffer irreparable injury unless the Court acts now.

### C. Injunctive Relief Will Not Burden the Interests of Others.

While CREW will suffer irreparably injury absent the requested injunctive relief, DOJ will bear no undue burden by a requirement that it merely comply with the law. The immediate relief CREW seeks will require nothing more of the government than what federal law already mandates: the expedited processing of CREW's FOIA request, treatment DOJ concedes is

warranted here. Nor will the requested relief burden the interests of others beyond that foreseen by Congress. In providing for expedited processing of qualifying requests, Congress intended that such requests take precedence over those that do not qualify for expedited treatment.

Moreover, DOJ statistics show that historically the Office of the Attorney General receives a limited number of requests for expedited processing. In FY 2016, for example, that office received 18 such requests, of which 13 were adjudicated within ten calendar days.[18] The median number of days to adjudicate these requests was 1, while the average number of days was 11.72. *Id.* In FY 2015, the Office of the Attorney General received 27 requests for expedited processing, adjudicated 23 within ten calendar days, with a median processing time of 8 days and an average processing time of 9.15 days.[19] Compared to its performance in prior years, the nearly five months the Office of the Attorney General claims to need to process CREW's narrow request raises serious questions about whether DOJ seeks to delay the revelation of potentially harmful or embarrassing information concerning the attorney general and his recusal. At a minimum, these statistics suggest DOJ should be able to do what the law and agency regulations require: process CREW's request in an expedited manner.

### D. The Public Interest Favors the Requested Relief.

The final factor in the preliminary injunction analysis weighs heavily in favor of granting the requested injunctive relief. The courts have long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *Washington*

---

[18] DOJ FY 2016 Annual FOIA Report, *available at* https://www.justice.gov/oip/page/file/920601/download.
[19] DOJ FY 2015 Annual FOIA Report, *available at* https://www.justice.gov/oip/department-justice-annual-foia-report-fy15-sectionVIII/download.

*Post*, 459 F. Supp. 2d at 76; *EPIC I*, 416 F. Supp. 2d at 42. Moreover, the FOIA starts from the premise that the public has an overwhelming interest in the release of information that "shed[s] light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). Here the public interest weighs in favor of a preliminary injunction because "[t]here is public benefit in the release of information that adds to citizens' knowledge" of government activities. *Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999). That benefit is heightened here where the requested documents concern the conduct of the attorney general who has been implicated, at least indirectly, in the unfolding scandal concerning ties between Russia and the Trump campaign.

### E. A Preliminary Injunction is the Most Appropriate Relief to Compel DOJ to Comply With its Statutory Obligations.

Finally, only a preliminary injunction will remedy the government's failure to act on a well-founded request for expedited processing. Following this logic, numerous courts have issued preliminary injunctions where agencies have failed to expedite FOIA requests. *See Washington Post*, 459 F. Supp. 2d at 67; *EPIC I*, 416 F. Supp. 2d at 35; *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004); *Aguilera v. FBI*, 941 F. Supp. 144, 152-53 (D.D.C. 1996.

The appropriate form of relief is no more than ordering DOJ to follow the statute and its own regulations. While DOJ may claim it is doing just that, the amount of time it has consumed belies any such claim. CREW was advised months ago that DOJ had located calendars responsive to its request, yet to date DOJ has not produced a single document or otherwise claimed an exemption. The remainder of CREW's request, as discussed above, concerns a discrete issue during a discrete period of time that, to date, has yielded no documents. DOJ's

unsubstantiated and unwarranted delay raises a question about its good faith in complying with its obligations under the FOIA. While the agency may be seeking to avoid or delay the revelation of embarrassing information, such a course would be a clear abuse of the FOIA process.

Recognizing the "widespread and exceptional" public interest in the records at issue here (which DOJ has acknowledged), and given that the FOIA "envisions the courts playing an important role in guaranteeing that agencies comply with its terms," *EPIC I*, 416 F. Supp. 2d at 37, CREW respectfully requests that the Court direct defendant DOJ to complete the processing of CREW's request and produce or identify all responsive records within one week of the issuance of its order.

## CONCLUSION

For the foregoing reasons, CREW's motion for a preliminary injunction should be granted.

                                                      Respectfully submitted,

                                                     */s/ Anne L. Weismann*
                                                     Anne L. Weismann
                                                     (D.C. Bar No. 298190)
                                                     Adam J. Rappaport
                                                     (D.C. Bar No. 479866)
                                                     Citizens for Responsibility and Ethics
                                                          in Washington
                                                     455 Massachusetts Ave., N.W., Sixth Floor
                                                     Washington, D.C. 20001
                                                     Phone: (202) 408-5565
                                                     aweismann@citizensforethics.org

Dated: June 1, 2017                      *Attorneys for Plaintiff*