**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, *Plaintiff*, v. U.S. DEPARTMENT OF JUSTICE, *Defendant*. | Civil Action No. 17-599 (TJK) |

**MEMORANDUM OPINION**

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") has brought this suit against Defendant U.S. Department of Justice ("DOJ"), seeking records relating to the Attorney General's decision to recuse himself from certain matters related to the 2016 presidential campaign. DOJ has moved for summary judgment, arguing that it conducted a reasonable search and produced the fruits of that search to CREW, thereby fulfilling its obligations under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. CREW argues that DOJ's document search was inadequate, as evidenced by its failure to uncover documents that CREW expected to receive. For the reasons set forth below, DOJ's motion will be granted.

**I.   Background**

On March 6, 2017, CREW filed a FOIA request with DOJ's Office of Information Policy ("OIP"). The request sought three categories of documents: "(1) all records containing or reflecting advice and/or recommendations given to Attorney General Jeff Sessions by his staff regarding whether or not he should recuse himself in any matters involving the 2016 presidential campaign; (2) copies of all calendars for Attorney General Sessions for the period February 27, 2017 through March 3, 2017; and (3) copies of all documents effectuating the attorney general's

recusal within the Department of Justice." ECF No. 19-2 at 20.  Having not yet received the documents it desired, CREW filed this lawsuit on April 4, 2017, to compel DOJ to produce them.  CREW initially sought a preliminary injunction, *see* ECF No. 10, a request that became moot when the parties began to chart a more cooperative path forward, *see* ECF No. 15.  In June and July 2017, DOJ released three sets of documents to CREW and notified CREW that its document productions were complete.  *See* ECF No. 19-1 ("DOJ Br.") at 2-3; ECF No. 19-2 at 25-53.

DOJ has now moved for summary judgment, arguing that it has undertaken an adequate search and produced all of the responsive, non-exempt documents it uncovered to CREW.  *See* DOJ Br. at 1.  In support of its motion, DOJ filed a detailed declaration sworn to by the OIP attorney who oversaw the search.  ECF No. 19-2.  OIP consulted with several different DOJ offices to search for relevant records: the Office of the Attorney General ("OAG"), the Departmental Executive Secretariat (which is the "official records repository for OAG"), the Justice Management Division (which reviewed the records of the Departmental Ethics Office), and the Office of the Deputy Attorney General (which "would perform the functions of the Attorney General with respect to matters from which he was recused").  *Id.* ¶¶ 15, 24, 25.  DOJ's search methodology included discussions with knowledgeable agency personnel, applying search terms (including variations on the word "recuse") to electronic documents, and manual review of potentially responsive records.  *See id.* ¶¶ 15-26.  Based on these efforts, the OIP attorney concludes, "all files likely to contain relevant documents were searched."  *Id.* ¶ 27.

In response to CREW's opposition, DOJ filed a supplemental declaration confirming that it had produced the Attorney General's entire calendar during the requested timeframe.  *See* ECF No. 23-1.  The declaration further explains that the Attorney General's schedule often changes during the day and sometimes differs from his official calendar.  *Id.* ¶ 12.

## II. Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). "In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true." *Light v. DOJ*, 968 F. Supp. 2d 11, 22 (D.D.C. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "A nonmoving party, however, must establish more than '[t]he mere existence of a scintilla of evidence' in support of its position." *Id.* (alteration in original) (quoting *Anderson*, 477 U.S. at 252).

Congress enacted FOIA in 1966 to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). In FOIA cases, "to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "The court may rely on a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* at 580-81 (quoting *Oglesby*, 920 F.2d at 68). "The court applies a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure . . . ." *Morley*, 508 F.3d at 1114 (quoting *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998)). The agency need not show that it "actually uncovered every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by

'purely speculative claims about the existence and discoverability of other documents.'" *Id.* at 1200 (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III. Analysis

CREW does not challenge the validity of DOJ's claimed FOIA exemptions; therefore, the only issue in this case is whether DOJ conducted an adequate search and produced all of the non-exempt documents it found. *See* ECF No. 20 ("CREW Br.") at 3; ECF No. 17 at 1.[1]  Taken at face value, DOJ's evidence demonstrates "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Mobley*, 806 F.3d at 580. CREW has presented no argument finding fault with the search methodology described by DOJ. CREW nonetheless makes two arguments for why the results of DOJ's search merit denying summary judgment.

First, CREW claims that irregularities in the Attorney General's calendar for March 2, 2017, mean that DOJ's search must have been inadequate. *See* CREW Br. at 7-10. In particular, the calendars do not account for a press conference, held at 4:00 p.m. that day, in which the Attorney General announced his recusal. *See id.* at 8; ECF No. 22 ¶ 2. In addition, even though the Attorney General had reportedly met with advisors to discuss recusal earlier on March 2, the only such meeting on his calendar that day was at 5:15 p.m., after his press conference. *See* CREW Br. at 3, 8; ECF No. 22 ¶ 3. According to CREW, these irregularities are simply "inexplicable" because DOJ possesses a "technology" that makes its calendars "easily modified with a single click." CREW Br. at 8. That technology—a computer program called Microsoft Outlook—means, in CREW's view, that it "is simply not credible" that the Attorney General's

---

[1] CREW also complained in its brief that DOJ had failed to timely file a statement of material facts pursuant to Local Rule 7(h). *See* CREW Br. at 3. DOJ subsequently sought and obtained leave to file its statement of facts out of time, with CREW's consent. *See* ECF No. 21.

calendars "are not updated as his schedule changes." *Id.* at 9. CREW also notes that the Attorney General's calendar entries are "permanent records" that should have been preserved per DOJ retention policies. *Id.* These facts, CREW claims, not only mean that DOJ conducted an inadequate search, but also raise the possibility that other entries on the Attorney General's calendar "are incomplete, inaccurate, or were not corrected or updated in other ways." *Id.* at 10.

Second, CREW points to "startling information" that this lawsuit has uncovered: that "no paper trail exists of what the attorney general has represented was a careful, deliberate decision." *Id.* at 2. CREW complains that DOJ, after four months, "ultimately produced only 11 pages of documents, nine of which it had located months earlier." *Id.* at 11. Moreover, none of those documents contained advice given to the Attorney General about his possible recusal. *See id.* at 10. DOJ's assertion that such documents do not exist is, according to CREW, "not credible." *Id.*

Both of CREW's arguments boil down to this: DOJ's assertion of a reasonable search is not to be believed because it failed to produce the number and type of documents that CREW expected to receive. Unfortunately for CREW, courts have rejected such arguments time and time again. "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Moreover, it "is well-established that speculation is not enough to undermine a finding that an agency conducted a reasonable search." *Blank Rome LLP v. Dep't of Air* Force, No. 15-cv-1200 (RCL), 2016 WL 5108016, at *7 (D.D.C. Sept. 20, 2016). Thus, courts routinely disregard "purely speculative claims about the existence and discoverability of other documents." *Sciacca v. FBI*, 23 F. Supp. 3d 17, 31 (D.D.C. 2014) (quoting *Justice v. IRS*, 798 F. Supp. 2d 43, 46 (D.D.C. 2011)).

CREW's belief that additional documents must exist is based on nothing but supposition. And even as supposition, it cannot withstand scrutiny. It is hardly surprising that a busy day might turn out differently for a senior government official than was planned on his calendar. Nor is it unheard of that an official might receive sensitive advice orally rather than in writing. It is also of no consequence that DOJ took several months to process CREW's FOIA request. "Courts routinely find that delays in responding to FOIA requests are not, in and of themselves, indicative of agency bad faith." *Skurow v. DHS*, 892 F. Supp. 2d 319, 326-27 (D.D.C. 2012).

Finally, the relief that CREW seeks is telling. CREW asks the Court to "order DOJ to conduct new searches," but provides no inkling of how those searches would differ from the ones that DOJ has already undertaken. CREW Br. at 11. "[A] requester's argument about the alleged inadequacy of a search is necessarily an argument for forward-looking relief. Therefore, what matters once the agency has fulfilled its burden under FOIA of conducting 'reasonably calculated' searches is whether the requester can identify any additional searches that must be conducted." *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013). CREW apparently wants DOJ to keep tilling the same ground until it hits pay dirt. But there is no good reason to compel DOJ to undertake that Sisyphean task. Thus, DOJ's labors in this case are at an end.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** DOJ's motion and enters summary judgment in its favor, in a separate order.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 15, 2018